1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND, et al., <br><br> Plaintiff(s), <br> v. <br><br> YELM PROPERTY DEVELOPMENT LLC, <br><br> Defendant(s). | CASE NO. C24-0127-KKE <br><br> ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

Plaintiffs (hereinafter "the Trust Funds") filed this action to enforce the obligations of Defendant Yelm Property Development, LLC ("Yelm") owed under agreements governing multiple plans formed under the Employee Retirement Income Security Act ("ERISA"). Dkt. No. 1. Yelm has not appeared in this action, and the clerk entered an order of default against it. Dkt. No. 10. The Trust Funds subsequently filed a motion for default judgment. Dkt. No. 13. Because the Trust Funds have shown that they are entitled to default judgment on their claims against Yelm, the Court will grant their motion.

## I.  BACKGROUND

The Trust Funds are joint labor-management trust funds organized under the Labor Management Relations Act that provide healthcare, pension, defined contribution, vacation, and

training benefit plans under ERISA. Dkt. No. 1 ¶¶ 1.1–1.4. The Trust Funds entered into compliance agreements with Yelm, binding Yelm to two master labor agreements along with each of the Trust Funds' trust agreements. *Id*. ¶¶ 3.1–3.10. The Trust Funds filed this action to enforce Yelm's obligation to report and pay fringe benefit contributions to the Trust Funds and to collect the delinquent fringe benefit contributions the company had failed to report and pay, plus liquidated damages and other amounts as allowed under the applicable contracts and ERISA. *Id*. ¶¶ 4.1–4.6.

An order of default was entered against Yelm in March 2024. Dkt. No. 10. In September 2024, the Court issued an order instructing the Trust Funds to show cause why the case should not be dismissed for failure to prosecute. Dkt. No. 11. The Trust Funds subsequently filed a motion for default judgment. Dkt. No. 13. The Court therefore lifts the order to show cause and proceeds to consider the merits of the motion for default judgment.

## II. ANALYSIS

### A. Jurisdiction

Before entering default judgment, a court must confirm that it has both subject matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

Here, the Court has federal question jurisdiction because the action arises under ERISA. *See* Dkt. No. 1 ¶ 2.1, Dkt. No. 13 at 4. Yelm resides and operates in this district, and was served in this district (Dkt. No. 7), and the Court thus properly exercises personal jurisdiction over Yelm. *See S.E.C. v. Ross*, 504 F. 3d 1130, 1138–39 (9th Cir. 2007) ("Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render

any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.").

B.   **Legal Standards**

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering a motion for default judgment, the court takes "the well-pleaded factual allegations" in the pleadings "as true[,]" but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

When considering whether to exercise its discretion to enter a default judgment, courts may consider various factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72. "The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors." *Fed. Nat'l Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015).

This district also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." Local Rules W.D. Wash. LCR 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 3

**C.   The Trust Funds are Entitled to Default Judgment.**

The Court now turns to apply the *Eitel* factors to this case, and finds that they support entry of default judgment against Yelm on the claims brought by the Trust Funds.

The first factor—prejudice to Yelm—supports entry of default judgment because the Trust Funds would suffer prejudice if default judgment were denied. Because Yelm has failed to defend, the Trust Funds would "be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery" if default judgment were not entered. *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).

"The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). The Trust Funds have alleged that Yelm has failed to timely report and pay fringe benefit contributions to them, and have submitted documentation showing that Yelm was obligated to do so and is now obligated to, as a result of its failure, pay liquidated damages, interest, attorney's fees, and costs. *See* Dkt. Nos. 1, 14, 15. Because the Trust Funds' allegations are assumed to be true for purposes of resolving this motion, and their complaint and documentation sufficiently allege and support their request for relief, the Court finds that the second and third *Eitel* factors support entry of default judgment.

The fourth *Eitel* factor is the sum of money at stake, and in this action, the Trust Funds seek an award totaling $363,808.11. *See* Dkt. No. 16. The Trust Funds acknowledge that this amount is a "relatively large sum[,]" and contend that this factor weighs in favor of entering a default judgment. Dkt. No. 13 at 6. The Court agrees, because the amount sought is proportional to the seriousness of Yelm's conduct. *See Curtis*, 33 F. Supp. 3d at 1212.

The fifth *Eitel* factor—the possibility of dispute over material facts—also favors entry of default judgment. Generally, after "default has been entered, courts find that there is no longer the

possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212.

The sixth *Eitel* factor—whether default is due to excusable neglect—favors entering default judgment because Yelm has failed to defend in this action by failing to appear, despite proper service of the summons and complaint. *See* Dkt. Nos. 7, 10.

The seventh *Eitel* factor—the policy favoring resolution of disputes via contested litigation—weighs against entry of default judgment. This factor is outweighed by the other factors, however, and default judgment is not precluded based on this policy. *See Emp. Painters' Trust v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at *4 (W.D. Wash. July 6, 2020) (finding "that in instances where a defendant's failure to appear makes a decision on the merits 'impractical, if not impossible,' any preference for deciding cases on the merits 'does not preclude a court from granting default judgment'" (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002))).

Because the *Eitel* factors on balance favor entry of default judgment, the Court will grant the Trust Funds' motion.

**D.    The Amounts Sought by the Trust Funds are Reasonable and Appropriate.**

As explained above, the Trust Funds have adequately supported their requests for $237,107.02 in delinquent fringe benefit contributions from March 1, 2023, through December 31, 2023; and $59,200.81 in liquidated damages as allowed under 29 U.S.C. § 1332(g)(2)(C)(ii) for that same time period. *See* Dkt. No. 14 at 340. The Trust Funds also adequately supported their request for $460.00 in costs. *See* Dkt. No. 15 at 36.

Similarly, the Trust Funds have supported their request for $31,093.50 in attorney's fees. *See* Dkt. No. 15 at 23–34. To determine the total amount of fees requested, the Trust Funds used the "lodestar" method, which involves multiplying the number of hours reasonably expended on

the claim or motion by reasonable hourly rates. *See, e.g.*, *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The Court is satisfied, based on a review of the timesheets provided, that the number of hours expended were reasonable. *See* Dkt. No. 15 at 23–34. The Court also finds that the hourly rates billed by the Trust Funds' attorney ($285–$305/hour) and litigation paralegals ($110–$135/hour) appear to be no higher than market rate for professionals with their level of experience. *See id.* ¶¶ 3, 4, 9. As an award of fees is authorized under the written terms of the applicable trust agreements (Dkt. No. 14 at 125–27, 187–89, 241–42) and under 29 U.S.C. § 1132(g)(2)(D), the Court will award the fees requested by the Trust Funds.

**E.    The Trust Funds Are Entitled to an Award of Pre-Judgment Interest at 12% Per Annum.**

The Trust Funds request that the Court award pre-judgment interest at the 12% per annum rate as specified in the trust agreements, as authorized under 29 U.S.C. § 1132(g)(2). *See* Dkt. No. 1 at 9; Dkt. No. 14 at 126, 188, 242. The Court will therefore award the $35,946.78 that the Trust Funds request in accrued pre-judgment interest, calculated through the date that the motion for default judgment was filed.[1] *See* Dkt. No. 14 ¶ 22; Dkt. No. 14 at 340–64.

### III.    CONCLUSION

For these reasons, the Court GRANTS Plaintiffs' motion for entry of default judgment. Dkt. No. 13.

Plaintiffs are entitled to the following amounts, for the period from March 1, 2023, through December 31, 2023:

(1) $237,107.02 in delinquent fringe benefit contributions;

(2) $59,200.81 in liquidated damages; and

---

[1] If the Trust Funds seek to recover pre-judgment interest through the date the default judgment is entered, they must file supplemental briefing on that issue addressing the appropriate calculation.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 6

(3) $35,946.78 in pre-judgment interest.

Plaintiffs are also awarded:

(4) $31,093.50 in attorney's fees;

(5) $460.00 in costs; and

(6) Post-judgment interest shall accrue at the 12% per annum rate specified in the applicable trust agreements, under 29 U.S.C. § 1132(g)(2).

Dated this 13th day of November, 2024.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge